UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA

                                                                        24-cv-2773 (PKC)
                                                                        21-cr-640 (PKC)

       -against-                                                   ORDER

SAUL DORTA-HERNANDEZ,

                           Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Saul Dorta-Hernandez, proceeding pro se, moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Dorta-Hernandez pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(b). Following his guilty plea, the Court sentenced Dorta-Hernandez principally to 152 months' imprisonment. He did not appeal his sentence. Dorta-Hernandez now urges that the performance of his counsel fell below the standard of effectiveness required under the Sixth Amendment. (ECF 166.) The government has filed a response that addresses all arguments made by Dorta-Hernandez. (ECF 180.)

        For the reasons that will be explained, Dorta-Hernandez's motion will be denied.

BACKGROUND

        The operative superseding indictment charges Dorta-Hernandez with one count of conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). (ECF 23.) The PSR, whose facts neither the government nor defendant objected to at sentencing (ECF 151 at Tr. 3), describes a drug-trafficking scheme in

1

which, among other things, Dorta-Hernandez was captured on video outside his own residence meeting with co-conspirators and exchanging bags that were later determined to contain either narcotics or payment for narcotics. (PSR ¶ 16.) Co-conspirators discussed, on phone calls lawfully intercepted by law enforcement, that they would obtain more drugs from Dorta-Hernandez because their supply of narcotics had been seized by law enforcement. (PSR ¶ 17.) During other intercepted phone calls, co-conspirators discussed calling Dorta-Hernandez to discuss the quality of drugs supplied to them, giving Dorta-Hernandez payments, and letting Dorta-Hernandez know their suspicions that another co-conspirator was working with law enforcement. (PSR ¶¶ 18, 20.)

The PSR states that Dorta-Hernandez was determined to be responsible for conspiring to distribute and possess with intent to distribute at least 50 kilograms but less than 150 kilograms of cocaine, and that he also maintained a stash house and was a drug supplier who trafficked kilogram-quantities of cocaine. (PSR ¶ 27.) There was no evidence that he possessed firearms in furtherance of the conspiracy. (Id.)

The Court appointed Jacqueline Cistaro as Dorta-Hernandez's attorney pursuant to the Criminal Justice Act (the "CJA"). (See Minute Entries, 8/20/2021.) The Court later, upon Ms. Cistaro's request, appointed Thomas F.X. Dunn as co-counsel under the CJA in order to assist her with reviewing the voluminous discovery in the action. (ECF 53, 54; Minute Entry, 12/15/2021.)

On June 2, 2022, Dorta-Hernandez pleaded guilty to conspiracy to distribute and possess with intent to distribute 500 grams and more of mixtures and substances containing a detectable amount of cocaine, a lesser-included offense within Count 1 of the Indictment. (ECF 78 at Tr. 16; Minute Entry, 6/2/2022.) Both Ms. Cistaro and Mr. Dunn were present at the plea

proceeding. Throughout the plea proceeding, Dorta-Hernandez was under oath. Dorta-Hernandez stated: "In the period between April of 2019 and October of 2021, I agreed to distribute and to possess with intent to distribute more than 500 grams of cocaine. I did this in New Jersey, but I did it knowing that the cocaine was going to New York, specifically the County of Westchester." He also stated that he knew what he was doing was wrong and unlawful. (ECF 78 at Tr. 14-15; PSR ¶ 34.) At this hearing, the Court explained to Dorta-Hernandez that his plea agreement with the government had a stipulated Guidelines range of 168 to 210 months' imprisonment, but that the Court had its own independent obligation to calculate the correct Guidelines range. (ECF 78 at Tr. 9-12.)

   The Court also asked Dorta-Hernandez to identify his signature on the plea agreement and asked him whether he had had the agreement translated into Spanish, discussed it with his lawyers, and asked questions of his lawyers about it; the Court also asked Dorta-Hernandez whether his lawyers had answered those questions to his satisfaction and whether he understood the agreement before he signed it. Dorta-Hernandez responded yes to each of these questions. (Id. at Tr. 10-12.)

   Finally, the Court explained to Dorta-Hernandez that, under the terms of his plea agreement, he had agreed not to appeal or collaterally attack a sentence within or below the stipulated Guidelines range of 168 to 210 months' imprisonment. Therefore, he had waived his right to appeal or collaterally attack the sentence unless it was above 210 months' imprisonment, "and, in that event, the law will only allow you to successfully appeal on the basis that the sentence is unreasonable or contrary to law." (Id. at Tr. 12-13.) Dorta-Hernandez, who utilized the services of a Spanish-language interpreter at the plea hearing, confirmed that he understood

this explanation by the Court. (Id. at Tr. 13.) Dorta-Hernandez confirmed that he was satisfied with his counsel's representation of him. (Id. at Tr. 5.)

At the plea proceeding, the Court explained that its sentence for the instant conduct was totally unrelated to any sentence Dorta-Hernandez might receive for violating his supervised release in the District of Puerto Rico. At Dorta-Hernandez's request, the Court repeated the explanation. (Id. at Tr. 9, 15-16.) Dorta-Hernandez consulted with his attorney, Mr. Dunn, before confirming that he understood and still wished to plead guilty. (Id. at Tr. 15-16.)

On April 12, 2023, the Court sentenced Dorta-Hernandez. The Court found that the stipulated Guidelines range of 168 to 210 months' imprisonment was correct and then sentenced Dorta-Hernandez to a below-Guidelines sentence of 152 months' imprisonment. (ECF 151 at Tr. 4, 19-20.) At sentencing, the Court advised Dorta-Hernandez that he had the right to appeal his sentence and that the Clerk of Court could prepare and file a notice of appeal on his behalf immediately, but that there were strict time limits for doing so. (Id. at Tr. 21-22.) Dorta-Hernandez confirmed that he understood this explanation. (Id. at Tr. 22.) Dorta-Hernandez never filed an appeal from the judgment, which was entered on April 12, 2023, and never asked the Clerk to file a notice of appeal on his behalf. (ECF 143.)

On April 8, 2024, Dorta-Hernandez filed a motion pursuant to 28 U.S.C. § 2255(a). (ECF 166; see also 24-cv-2773 at ECF 1.) He asserts that he was denied the effective assistance of counsel, in violation of his Sixth Amendment rights, on two separate grounds, alleging that: (1) defense counsel did not file a notice of appeal, and (2) defense counsel was ineffective during the pretrial and plea stages of the action, including by not "independently investigat[ing] the case," "nor fil[ing] a motion to suppress." (ECF 166 at 8-9.) In his petition, Dorta-Hernandez lists only Ms. Cistaro as the attorney who represented him. (Id. at 14.) Dorta-

4

Hernandez asks this Court to vacate his sentence and to "remand with effective counsel," or alternatively, to "convene an evidentiary hearing." (Id. at 16.)

The Court ordered the government to respond to Dorta-Hernandez's motion. (ECF 167.) The government argued that, in order to respond to the petition, statements would be necessary from the attorneys Dorta-Hernandez accused of providing ineffective assistance. (ECF 168.) Dorta-Hernandez filed a written waiver of attorney-client privilege along with his memorandum of law in support of his section 2255 motion. (ECF 171 at 19-21.) The government sought an Order from the Court directing Ms. Cistaro and Mr. Dunn to provide affidavits addressing Dorta-Hernandez's claims. (ECF 172.) The Court entered the requested Order. (ECF 173.)

On July 29, 2024, the government submitted its opposition to Dorta-Hernandez's motion, attaching the affidavits from Ms. Cistaro and Mr. Dunn as exhibits. (ECF 180.)

LEGAL STANDARD

A person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (citation omitted). Review of a section 2255 motion "is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting Graziano, 83 F.3d at 590). An evidentiary hearing may be necessary if the motion "set[s] forth specific facts supported by competent evidence," but not if the factual assertions are "vague, conclusory, or

5

palpably incredible." Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013) (citations omitted).

A defendant asserting that counsel's performance was constitutionally deficient under the Sixth Amendment must satisfy a two-prong test. "Under Strickland, we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Hinton v. Alabama, 571 U.S. 263, 272, (2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 366 (2010)); Strickland v. Washington, 466 U.S. 668, 694 (1984).

In deciding whether counsel's performance was objectively reasonable, a court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Bierenbaum v. Graham, 607 F.3d 36, 50–51 (2d Cir. 2010) (quoting Strickland, 466 U.S. at 689). In deciding the prejudice prong, a court must determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Strickland, 466 U.S. at 694). "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Griggs v. Lempke, 797 F. App'x 612, 617 (2d Cir. 2020) (summary order) (quoting Strickland, 466 U.S. at 691).

A defendant's testimony at a plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its

discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) (citations omitted). "A defendant's bare allegations in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth." Mejia v. United States, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) (Marrero, J.) (citations omitted).

DISCUSSION

I.   Failure to Appeal

Dorta-Hernandez was required to file his notice of appeal within 14 days after the entry of judgment under Rule 4(b), Fed. R. App. P. No notice of appeal was filed.

Dorta-Hernandez first alleges that, although he believes that he had meritorious issues to raise on appeal, his defense attorney did not file a notice of appeal on his behalf. (ECF 171 at 5.) He alleges that the failure to file a notice of appeal violates the first prong of the Strickland standard—the reasonableness of counsel's performance. (Id. at 8.) He further alleges that his defense counsel saw him "as a pay-day and a complete neophyte concerning the law and the legal process," and that his defense counsel left the sentencing hearing "without as so much of a word about a direct appeal or if the petitioner wanted to file a notice of appeal." (Id. at 9-10.)

"Under § 2255, '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law.'" Brown v. United States, 2022 WL 17420465, at *2 (2d Cir. Dec. 6, 2022) (summary order)

(quoting 28 U.S.C. § 2255(b)). "Applying this standard, the district court must 'determine[ ] whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief.'" Id. (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)).

"[W]henever a § 2255 movant 'claims that his attorney failed to file a requested notice of appeal,' the district court is required to hold a hearing 'to determine whether the client requested the appeal . . . without assessing the merits of the requested appeal.' That hearing need not be testimonial." Daragjati v. United States, 598 F. App'x 50, 52 (2d Cir. 2015) (summary order) (citations omitted); see also Campusano v. United States, 442 F.3d 770, 776 (2d Cir. 2006). "An evidentiary hearing is required if a § 2255 movant can show a 'plausible' claim to relief, which is not the same as demonstrating he will ultimately prevail; a hearing is properly denied only if the record 'conclusively show[s]' that the prisoner is entitled to no relief." Abdalla v. United States, 2024 WL 302386, at *1 (2d Cir. Jan. 2024) (summary order) (quoting Puglisi, 586 F.3d at 213); 28 U.S.C. § 2255(b).

A "defendant's request to file an appeal generally 'involves off-the-record interactions with his trial counsel and therefore cannot be determined by examining the motion, files, and records before the district court'—that is, without further supplement of the record." Brown, 2022 WL 17420465 at *2 (quoting Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001)). "An attorney's unsworn statements in a brief are not evidence. But when an attorney makes statements under penalty of perjury in an affidavit or an affirmation, the statements do constitute part of the evidentiary record and must be considered." Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009) (citations omitted). See also Brown, 2022 WL 17420465 at *2 ("The district court . . . committed clear error when it summarily denied Brown's § 2255 motion on the

8

basis of Brown's inconsistent statements without holding a testimonial hearing or, in the alternative, ordering a more limited method of supplementing the evidentiary record, such as directing Brown's sentencing counsel to submit a responsive affidavit.").

Here, the Court concludes, based on the supplemented record, including the sworn affidavits from Dorta-Hernandez, Ms. Cistaro, and Mr. Dunn, that no evidentiary hearing is warranted because the record conclusively shows that Dorta-Hernandez is not entitled to relief.

The Court first notes that Dorta-Hernandez falls short of asserting that he actually asked his attorneys to file a notice of appeal. (See, e.g., ECF 171 at 5 ("Even though petitioner had issues, he believes, with merit, defense attorney did not file a notice of appeal."); id. at 9-10 ("After he received 152 months of imprisonment, defense counsel just packed up his belongings and left the petitioner without as so much of a word about a direct appeal or if the petitioner wanted to file a notice of appeal.").) As the government points out, Dorta-Hernandez also does not claim that he contacted defense counsel to remedy the error after discovering that no notice of appeal had been filed on his behalf. (ECF 180 at 5.)

The Court concludes that there is no evidence in the record that Dorta-Hernandez asked either of his attorneys to file an appeal but that his attorneys, despite this request, failed to do so. The Court therefore concludes that counsel's performance was not ineffective for failing to file a notice of appeal.

Dorta-Hernandez asserts, however, that defense counsel did not "consult" with him "about filing an appeal or even a notice of appeal." (ECF 171 at 10.) Dorta-Hernandez notes, correctly, that the term "consult" in this context has a "specific meaning." (Id.) See Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000) ("We employ the term 'consult' to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal,

9

and making a reasonable effort to discover the defendant's wishes."). Dorta-Hernandez asserts that "[n]one of that took place here," and that his defense attorneys did not "advise the petitioner of issues of [sic] the hearings that may have been preserved at sentencing" and "did not point out any errors of the proceedings and what could have been done to make sure that the fight could continue in order to reduce the sentence or prove his innocence if there was a path for such a possibility." (ECF 171 at 10-11.) He also asserts that "[c]ounsel did not do the very least, which was to file a notice of appeal," noting that it is merely a "ministerial" task. (Id. at 11 (citing Garza v. Idaho, 586 U.S. 232, 239 (2019)).)

"[C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known." Flores-Ortega, 528 U.S. at 480 (citation omitted). "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id.

On this record, the Court concludes that there exists no reason to think that a rational defendant would want to appeal. Dorta-Hernandez's plea agreement contained a waiver of his right to appeal if he were sentenced to a term of imprisonment that was within or below

the stipulated Guidelines range, which, in fact, occurred. (ECF 180-1 at 4.) He received a below-Guidelines sentence. There is also no indication in the record that Dorta-Hernandez ever reasonably demonstrated to counsel that he was interested in filing an appeal, and Dorta-Hernandez does not claim that he ever made such a demonstration.

In her sworn affidavit to this Court, Ms. Cistaro affirms that she participated in extensive plea negotiations with the government, and that she and Mr. Dunn thoroughly discussed the plea agreement with Dorta-Hernandez, provided him with a translated copy of the plea agreement, and confirmed that he understood the terms and conditions of the plea agreement. (ECF 180-2 ¶¶ 16-17.) She notes that Dorta-Hernandez voluntarily entered a plea of guilty in accordance with the plea agreement and received a below-Guidelines sentence. (Id. ¶¶ 18-19.) Ms. Cistaro also affirms that she advised Dorta-Hernandez of his right to appeal and his appellate rights in accordance with the plea agreement, and at no time did Dorta-Hernandez advise her that he wished to appeal his plea or sentence. Instead, Cistaro declares, Dorta-Hernandez asked about the next steps regarding his violation of supervised release. (Id. ¶ 20.)

Mr. Dunn's affidavit (ECF 180-3) expands on the steps he took to review the plea agreement with Dorta-Hernandez and to consult with him about his options. Mr. Dunn affirms that, upon receiving the initial plea agreement from the government, he requested translation of the document into Spanish, although Dorta-Hernandez had not requested a copy in Spanish, since he is bilingual. Mr. Dunn asserts that copies of the plea agreement were provided to Dorta-Hernandez in English and Spanish. (Id. at 1-2.) Mr. Dunn discussed the initial plea agreement with Dorta-Hernandez in a lengthy phone call, during which they discussed the mandatory minimum penalty, the maximum penalty, and the advisory Guidelines range. Mr. Dunn states that he advised Dorta-Hernandez that if he accepted the plea agreement, he would be waiving his

right to appeal if he were sentenced below or within the advisory Guidelines range, which in the initial plea agreement was 210 to 262 months' imprisonment. (Id. at 2.)

Mr. Dunn met with Dorta-Hernandez in person at the Essex County Correctional Facility several days later to review the initial plea agreement again. (Id.) During that visit, Mr. Dunn asserts that a Spanish interpreter accompanied him, although Dorta-Hernandez advised him he did not need the services of an interpreter; the interpreter remained at the meeting and helped to verbally translate the plea agreement. (Id.) At this meeting, Mr. Dunn explained to Dorta-Hernandez that Ms. Cistaro was still negotiating with the government and that they were "optimistic" that the government would agree to provide a revised plea agreement that would remove the two-level enhancement for a leadership role that had been included in the initial plea agreement. (Id.)

The revised plea agreement, dated May 25, 2022, removed the leadership role enhancement, and the revised Guidelines range was 168 to 210 months. The changes in this version of the plea agreement were also translated into Spanish, although once again, Dorta-Hernandez did not request a translation. (Id. at 2-3.) On May 26, Mr. Dunn had another long telephone call with Dorta-Hernandez, in which they discussed the new plea agreement, including the revised Guidelines range. (Id. at 3.) Dunn states, "I reviewed the mandatory ten-year minimum penalty and the maximum sentence under the statute. I advised Mr. Dorta that the agreement contained a waiver of his right to appeal if he was sentenced below or within the advisory guideline range of 168-210 months." (Id.)

Mr. Dunn had another phone call with Dorta-Hernandez on May 31, where they again reviewed the plea agreement and where Mr. Dunn reviewed the questions he expected the Court to ask at his plea hearing, "including but not limited to the constitutional rights he would

waive by a guilty plea among other expected questions, whether he was entering the plea of his own free will and whether it was his decision to plead guilty and advised him the court would ask if he entered into the agreement of his own free will." (Id.) Mr. Dunn also met with Dorta-Hernandez to review his plea allocution on June 2, 2022, the day that Dorta-Hernandez entered his plea of guilty. (Id.)

Mr. Dunn states that Ms. Cistaro represented Dorta-Hernandez at his sentencing hearing, and that Dorta-Hernandez did not inform him or Ms. Cistaro of his desire to file a notice of appeal at any time. (Id.) Mr. Dunn further asserts that Ms. Cistaro informed him that she advised Dorta-Hernandez of his right to appeal and discussed with him whether he wanted to file an appeal, "and he was informed there were no issues to appeal and that he had waived his right to appeal in the plea agreement if sentenced to a sentence within or below his guideline[s] of 168-210 [months]." (Id. at 3-4.) He states that Ms. Cistaro advised him that she informed Dorta-Hernandez that, because he had been sentenced to 152 months, he had waived his right to appeal. (Id. at 4.) Finally, Mr. Dunn asserts that at no time did Dorta-Hernandez advise him or Ms. Cistaro that he wanted to appeal his sentence. (Id.)

The Court notes that, in his affidavit, Dorta-Hernandez also makes several claims that could be construed as his potential grounds for an appeal. He affirms that Ms. Cistaro met with him only three times during the approximately three-year pre-trial period, never provided him with a complete set of discovery documents, so that he had to learn certain information from his co-defendants, and advised him he would get a sentence of approximately 120 months "at wors[t]." (ECF 171 at 15-16.) He also asserts that after pleading guilty on the advice of his counsel, he expected "a lesser sentence, since his role in the conspiracy was minor." (Id. at 9.) Dorta-Hernandez also states that there was no connection between him and the "alleged 51 kilos

13

of drugs," that he informed Ms. Cistaro of that fact, and that he wanted to inform the Court as well, but Ms. Cistaro would not allow him to testify to that fact. (Id. at 16.)

But the Court notes that, at his sentencing, Dorta-Hernandez pleaded guilty to a lesser-included offense of conspiracy to distribute and possess with intent to distribute of 500 grams or more of substances containing cocaine—not the "51 kilos" that Dorta-Hernandez refers to, although the PSR held him responsible for at least 50 kilograms but less than 150 kilograms of cocaine. (PSR ¶ 27.) Dorta-Hernandez also does not specify what information he was not provided by his attorneys or that he learned only from his co-defendants. He also stated at his plea hearing that he understood the Court could sentence him below, within, or above the stipulated Guidelines range of 168 to 210 months, and that any predictions or estimates made to him by others, including his own attorneys, were not binding. (ECF 78 at Tr. 12 ("THE COURT: I want you to know that any prediction, calculation, or estimate that anyone has made to you, including your own lawyers, as to what sentence I might give you is not binding on me, not binding on the Court, and if it turns out to be wrong, you will not be permitted to withdraw your guilty plea. Do you understand that? THE DEFENDANT: Yes, sir.").)

The Court concludes that Dorta-Hernandez's claim that he received ineffective assistance of counsel under these grounds fails.

II.     Failure to Investigate the Case and to Move to Suppress Evidence

Second, Dorta-Hernandez asserts that his attorneys were also ineffective because they failed to conduct any independent investigation into his case. (ECF 171 at 12.) Dorta-Hernandez cites ABA Standards advising criminal defense attorneys to conduct a "prompt investigation" of the case and to "explore all avenues leading to facts relevant to the merits of the

14

case." (Id. at 12-13.) Dorta-Hernandez states in his sworn affidavit that Ms. Cistaro "made no attempt to gather independent information in order to defend me" and that the only statement that placed him in the conspiracy was an "un-proven statement which could have been easily challenged, but defense attorney's lack of investigation made it so she could not impeach a false statement." (Id. at 15-16.) In response, the government notes that, in his memorandum of law, Dorta-Hernandez does not point to any specific investigative steps that he alleges his attorneys did not take. (ECF 180 at 6.)

In response, Ms. Cistaro declares that she submitted a request in September 2021 for the Court to appoint an investigator to conduct an independent investigation into the case, and the Court appointed Joseph Lively to do so. (ECF 180-2 ¶ 3.) She asserts that the investigator met with Dorta-Hernandez on three separate occasions—providing the specific dates—to discuss the charges, witnesses, evidence, and to "gather any and all information to prepare an independent investigation." (Id. ¶ 5.) The investigator also had several calls with Dorta-Hernandez's wife to gather information in order to determine any and all possible defenses in the case. (Id. ¶ 6.) Ms. Cistaro declares that she also had several calls with Dorta-Hernandez for the same reasons. (Id. ¶ 7.)

Both Ms. Cistaro and Mr. Dunn, moreover, describe their own efforts to investigate the facts of the case and to review the voluminous discovery. Ms. Cistaro affirms that she participated in multiple phone calls and jail visits with Dorta-Hernandez to discuss the indictment, possible defenses, discovery, potential pretrial motions, and plea negotiations; that she reviewed the discovery produced by the government, "including but not limited to, agent reports, line sheets transcribing recorded calls, Title III reports, search warrants, affidavits in support of search warrants, undercover reports, videos, photographs, GPS, and the previous PSR

15

report," and participated in numerous calls with her co-counsel, Mr. Dunn, concerning this discovery material and possible defenses.  (Id. ¶¶ 8-14.)

Similarly, Mr. Dunn affirms that he discussed the case with Ms. Cistaro the day he was appointed under the CJA (December 15, 2021), that he reviewed the discovery in the case, as well as Dorta-Hernandez's presentence reports from a previous case and the instant case, and that he had a "lengthy" telephone conference with Ms. Cistaro and Dorta-Hernandez in which they discussed discovery, defense strategies, his criminal history, his prior federal case, and the mandatory minimum sentence from a guilty plea or from a conviction at trial.  (ECF 180-3 at 1.)  He had several "lengthy" phone calls over the course of several months with Dorta-Hernandez, as well as the visits to him at Essex County Correctional Facility to discuss the plea agreement, described above.  (Id. at 1-2.)

The Court concludes that Dorta-Hernandez's conclusory allegations that his counsel failed to investigate the case are rebutted by Ms. Cistaro's affidavit declaring that she asked the Court to appoint an independent investigator—whom the Court did appoint—and her statements that she gathered information for the investigation, including by discussions with Dorta-Hernandez and his wife.  Because, moreover, Dorta-Hernandez fails to point to what evidence or information his counsel failed to investigate, the Court is also prevented from determining whether the failure to investigate that he asserts was prejudicial to him.

Finally, as the government notes, while Dorta-Hernandez initially mentioned his counsel's alleged failure to move to suppress certain evidence (ECF 166 at 9), he does not elaborate on this in his memorandum of law or affidavit.  (ECF 171; ECF 180 at 7 n.3.)  The Court concludes that Dorta-Hernandez has abandoned that argument; if Dorta-Hernandez had not abandoned the argument, however, the Court concludes that it would still deny his claim of

16

ineffective assistance on those grounds for much the same reasons as his "failure to investigate" argument: he does not identify what evidence his counsel failed to move to suppress or how that alleged failure prejudiced him.

CONCLUSION

Dorta-Hernandez's motion for relief under 28 U.S.C. § 2255 is DENIED. The Clerk is respectfully directed to terminate the motion (ECF 166, 21-cr-640) and to close the civil case captioned Dorta-Hernandez v. United States, 24-cv-2773 (PKC).

Dorta-Hernandez has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011). This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:     New York, New York
           October 7, 2024

COPY MAILED TO:
Saul Dorta-Hernandez, Register No. 41860-069
FCI Fort Dix
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 2000
JOINT BASE MDL, NJ   08640

17